# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAN BAYSE, ) <br> individually and on behalf of all ) <br> others similarly situated, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> HP, INC., ) <br>  ) <br> Defendant. | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Dan Bayse, individually and on behalf of all others similarly situated, and for his Class Action Complaint states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's and Class Members' state law claims under 28 U.S.C. § 1367.

2. In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action with more than 100 members and where the aggregate claims of all Class Members are in excess of $5,000,000.00, exclusive of interest and costs, and minimal diversity exists.

1

3. This Court has personal jurisdiction over Defendant because Defendant:

    a. intentionally and purposefully availed itself of this jurisdiction by marketing its products to millions of consumers, including residents throughout Alabama and this District;

    b. has directed tortious acts toward individuals residing within this District, and has committed tortious acts that it knows or should have known would cause injury to the Plaintiff and Class Members in this District;

    c. has transacted substantial business in this state, including entering into contracts with thousands of Alabama residents, including Plaintiff Bayse and other residents of this District, and because said business and contracts form part of the subject matter of this suit; and

    d. has sales representatives active within Alabama and this District.

4. Defendant has engaged in conduct intentionally designed to solicit business from consumers in the State of Alabama and in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) since Defendant transacts business within this judicial district. Likewise, a substantial part of the events giving rise to the claim occurred within this judicial district.

## PARTIES

6. At all relevant times, Plaintiff Dan Bayse was a citizen and resident of Jefferson County, Alabama.

7. Defendant HP, Inc. (hereinafter "HP") was created on November 1, 2015, when it was spun-off of its parent company, Hewlett-Packard. Defendant HP comprises, among other things, the printer business of the Hewlett-Packard family of corporations. Defendant HP is a corporation organized under Delaware law with its headquarters and principal place of business in Palo Alto, California. Defendant HP may be served care of CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

8. Defendant HP is the largest manufacturer and distributer of inkjet printers in the United States, and one of the largest manufacturers and distributers of such printers in the world. It is estimated that HP sold over 8 million printers in the first quarter of 2016.

9. Defendant HP sells both printers, including their OfficeJet, OfficeJet Pro and OfficeJet Pro X line of printers, as well as supplies for those printers, such as ink.

10. Defendant's printers, as described above, represent half or more of the market for personal printers in the U.S.

11. Upon information and belief, Defendant HP sells its printers at a competitively low price to encourage consumers to purchase them, with the hope to make money when the consumer returns to the store to purchase additional ink cartridges for their printer.

12. Defendant HP's sales of printer supplies, which includes inkjet printer ink, accounted for $3.1 billion in revenue in the second quarter of 2016 alone.

13. Defendant HP sells its ink at a premium price, and, as a result, an entire industry has evolved to both (1) refill and resell HP ink cartridges and (2) to manufacture third-party cartridges compatible with Defendant's printers.

14. This market for ink cartridges compatible with Defendant's printers is national, substantial, and competitive, producing benefits for the Plaintiff and Class Members.

15. Defendant HP acknowledges the existence of this market of third-party or refilled ink-cartridges in the warranty for its printer products, when it states that "the use of a non-HP cartridge or a refilled cartridge does not affect either the warranty to the customer or any HP support contract with the customer." Defendant explicitly acknowledges and anticipates that consumers of its printers have the right to, and in many cases, choose to use a "non-HP cartridge or a refilled cartridge."

16. In order to monopolize this market for cartridges compatible with its printers, in late 2015 Defendant HP intentionally began to silently, and without

notice to its consumers, push out firmware updates for its OfficeJet, OfficeJet Pro and OfficeJet Pro X line of printers. This firmware update included software which, when activated, would disable these printers from using certain third-party, refilled or remanufactured ink cartridges.

17. However, Defendant HP's firmware update did not immediately activate to disable the use of certain third-party or remanufactured ink cartridges. Instead, Defendant HP seemingly designed its software to be a ticking time bomb, silently counting down to the appointed hour before triggering.

18. On or about September 13, 2016, Defendant HP's time bomb activated, and, without any warning from the Defendant, consumers around the world found themselves without the ability to use certain third-party, refilled or remanufactured ink cartridges.

19. These acts by Defendant are highly likely to destroy the competitive market for ink cartridges compatible with its printers, inasmuch as owners of the printers will no longer be able to purchase for use in the printers any ink cartridge not made by Defendant. There is a high and dangerous probability that Defendant will attain and obtain a monopoly of the market for the cartridges, which is its specific intent. This intent and the acts taken to fulfill it, as alleged, is attempted monopolization proscribed by federal law, specifically Section 2 of the Sherman Act, 15 U.S.C. § 1, *et seq.*

20. Defendant HP does not deny that it took these actions. In fact, the Defendant issued a press release readily admitted that it sabotaged its consumers' ability to use the ink cartridges of their choosing:

> HP is constantly improving security for its products and customers. Beginning in late 2015, HP implemented updates to the firmware related to the security chip in HP OfficeJet, OfficeJet Pro and OfficeJet Pro X printers that maintains secure communications between the cartridge and the printer. The purpose of this update is to protect HP's innovations and intellectual property.

(http://www8.hp.com/us/en/hp-news/press-release.html?id=2335831#.V-VxMYgrKUn, last accessed September 23, 2016).

21. Defendant HP warrants that its printers "will be free from defects in materials and workmanship" and notes, specifically, that its warranty does not cover problems arising from "[s]oftware, media, parts, or supplies not provided or supported by HP . . . ." The corollary to this, is that Defendant HP's warranty does cover "software, media, parts, or supplies" "provided or supported by HP."

22. The firmware update was part of the software of Defendant HP's printers and it was either provided to its consumers by HP or supported by HP.

23. By disabling its consumers' ability to use the third-party, refilled or remanufactured cartridges of their choice in their HP printer, Defendant HP has altered its printers—for the worse—from the products purchased by Plaintiff and Class Members.

24. The printers are now not what they were when purchased.

6

## FACTUAL ALLEGATIONS PARTICULAR TO DAN BAYSE

25. In 2014, Plaintiff Dan Bayse purchased an HP OfficeJet Pro 8600 Premiere N-911N for approximately $400.

26. When he purchases cartridges, he utilizes cartridge numbers 950 (black) and 951 (color). Generally, he buys the XL versions.

27. He is a frequent users of cartridges and prints approximately 10,000 pages per year.

28. The average usage of an XL cartridge is 1800 pages and accordingly he purchases, and expects in the future to purchase, more than five cartridges per year.

29. After HP's firmware update, he is concerned that the price for HP ink cartridges will rise. As printers get old, it becomes harder to find the HP cartridges at the stores he frequents. As his printer is also more than two years old, he is concerned that, as the price for HP ink cartridges rise, he will be unable to utilize third party quality cartridges online because of HP's firmware updates. As his printer is older now, he is considering using high quality third-party cartridges but HP's firmware update has prevented him from being able to do so.

30. These high quality third party cartridges would save him money but his option to purchase them are now foreclosed due to HP's firmware update. Further, if he were to choose to sell the printer on the used market its value would be

decreased as the product is not what he originally purchased and future users are now precluded from using third party, refilled or remanufactured ink cartridges.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this complaint on his own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class defined as:

   a. All persons in the United States who purchased and/or otherwise owned a printer manufactured and/or sold by the Defendant in the OfficeJet, OfficeJet Pro and/or OfficeJet Pro X line of printers, any time between September 18, 2009 and September 18, 2016.

32. Excluded from the above Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors.

33. This action is properly maintainable as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure, because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

34. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law or fact predominate over any questions affecting only individuals members of the

Plaintiff Class, and because a class action is superior to other methods for the fair and efficient adjudication of the controversy.

35. The Class Members are so numerous that joinder of all Members is impracticable. The Class Members are geographically dispersed and number in the thousands or millions. Disposition of the claims of the proposed Classes in a class action will provide substantial benefits to both the parties and the Court.

36. The rights of each member of the proposed Classes were violated in a similar fashion based upon Defendant's uniform wrongful actions and/or inaction.

37. The questions of law and fact which are common to each proposed Class Member predominate over questions that may affect individual Class Members include:

    a. Whether Defendant breached a duty owed to Plaintiff and Class Members;

    b. Whether Defendant's actions were willful and/or exhibited reckless indifference towards the Plaintiff and Class Members;

    c. Whether Defendant's firmware update which stripped the printer of functionality it had when purchased by Plaintiff and Class Members constitutes a defect as contemplated by the warranty; and

    d. Whether Defendant's actions constitute an attempt to monopolize the market for ink cartridges compatible with its printers.

38. Plaintiff's claims are typical of the claim of absent Class Members. If brought individually, the claim of each Class Member would necessarily require proof of the same material and substantive facts, and seek the same remedies.

39. Further, and in the alternative, Rule 23(c)(4) permits an action to be maintained as a class action with respect to only particular issues, and the common questions of law and fact set forth above raise issues which are appropriate for class treatment pursuant to Rule 23(c)(4).

40. The Plaintiff is willing and prepared to serve the Court and the proposed Classes in a representative capacity. The Plaintiff will fairly and adequately protect the interest of the Classes and have no interests adverse to, or which directly and irrevocably conflicts with, the interests of other Members of the Classes. Further, the Plaintiff has retained counsel experienced in prosecuting complex class action litigation.

41. Defendant has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate equitable relief with respect to the Classes.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual claims by the Class Members are impractical, as the costs of prosecution may exceed what any Class Member has at stake.

43. Members of the Classes are readily ascertainable through Defendant's records of warranty receipts and IP addresses used to download software, as well as retail receipts showing purchase of any of the affected models of Defendant HP's printers.

44. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incomparable standards of conduct for Defendant. Moreover, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members.

45. Proposed class counsel are experienced in complex, class action litigation, have no conflicts of interest, and will zealously pursue the interests of the Proposed Class Members herein.

## CAUSES OF ACTION

### COUNT I
### INJUNCTIVE RELIEF

46. Plaintiff repeats, realleges, and incorporates the preceding paragraphs in this Complaint as if fully set forth herein.

47. Defendant did, without the consent of Plaintiff or Class Members, force a firmware update upon the HP printer products owned by Plaintiff and Class Members. Such firmware update stripped the HP printer products owned by Plaintiff

and Class Members of the ability to work with certain third-party, refilled or remanufactured ink cartridges.

48. Plaintiff and Class Members suffered financial harm, including the loss of value of any such third-party, refilled or remanufactured ink cartridges they had purchased, as well as the loss in the value of their HP printers due to their now reduced functionality.

49. Plaintiff and Class Members demand an order to enjoin Defendant to, inter alia, remove the software at issue from all printers belonging to the Plaintiff and Class Members, to restore the printers at issue to the operating condition that preexisted the software, and to cease placing the software in printers made and sold by it in the future.

50. Plaintiff demands an order for Defendant to pay any costs or fees they have incurred by prosecuting this action.

## COUNT II
## NEGLIGENCE AND/OR WANTONNESS

51. Plaintiff repeats, realleges, and incorporates the preceding paragraphs in this Complaint as if fully set forth herein.

52. Defendant had a duty not to interfere with the functionality of the printer products purchased by the Plaintiff and by the Class Members.

53. Defendant negligently and/or wantonly breached this duty through the use of a software time-bomb designed to alter the functionality of the printer

products to no longer accept certain third-party, refilled or remanufactured ink cartridges, in an attempt to force Plaintiff and Class Members to purchase HP branded ink cartridges.

54. Plaintiff and Class Members suffered financial harm, including the loss of value of any such third-party, refilled or remanufactured ink cartridges they had purchased, as well as the loss in the value of their HP printers due to their now reduced functionality. This harm was a reasonably foreseeable result of the Defendant's actions.

55. Defendant's breach of said duty is the proximate cause of the injuries suffered by Plaintiff and Class Members.

56. Defendant's actions were willful and/or exhibited reckless indifference towards the Plaintiff and Class Members, such as to warrant punitive damages.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendant on this count for actual and compensatory damages; for punitive or exemplary damages; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

### COUNT III
### BREACH OF WARRANTY

57. Plaintiff repeats, realleges, and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

58.     Defendant warranted that its printers "will be free from defects in materials and workmanship" and notes, specifically, that its warranty does not cover problems arising from "[s]oftware, media, parts, or supplies not provided or supported by HP . . . ."  The corollary to this is that Defendant HP's warrant does cover "software, media, parts, or supplies" "provided or supported by HP."

59.     The firmware update was part of the software of Defendant HP's printers, and was either provided to its consumers by HP or supported by HP.

60.     The firmware update which stripped the printer of functionality it had when purchased by Plaintiff and Class Members constitutes a defect as contemplated by the warranty.

61.     Plaintiff and Class Members were directly harmed by Defendant HP's breach of its warranty.  Such harm includes including the loss of value of any such third-party, refilled or remanufactured ink cartridges they had purchased, as well as the loss in the value of their HP printers due to their now reduced functionality.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendant on this count for actual and compensatory damages; for punitive or exemplary damages; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE SHERMAN ACT – 15 U.S.C. § 1, *et seq.*

62. Plaintiff repeats, realleges, and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

63. Defendant's acts, as alleged, constitute attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 1, *et seq.* The market the Defendant illegally is attempting to monopolize is the market for ink cartridges compatible with its printers, as those printers are identified in this Complaint.

64. This illegal attempt to monopolize has hurt and will hurt the Plaintiff by depriving him of a competitive market for the ink cartridges he needs for his printer, which is the Defendant's intent and is a harm the Sherman Act is intended to thwart and to provide redress. The harm is direct, because the Plaintiff is a direct purchaser and consumer of the ink cartridges, no more remote than any other purchaser and consumer who likewise is harmed. Upon information and belief, there is no potential for duplicative recovery or complex apportionment of damages.

WHEREFORE Plaintiff and Class Members pray for Judgment in their favor and against Defendant on this count for actual and compensatory damages; for punitive or exemplary damages; for costs, expenses and attorney fees as allowed by law; and for such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Members of the proposed Class pray that this Honorable Court do the following:

A.   Certify the matter as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and order that notice be provided to all Class Members;

B.   Designate Plaintiff as representative of the Class and the undersigned counsel as Class Counsel;

C.   Enjoin the Defendant's violation of the Sherman Act, requiring it, inter alia, to remove the software at issue from all printers belonging to the Plaintiff and Class, to restore the printers at issue to the operating condition that preexisted the software, and to cease placing the software in printers made and sold by it in the future;

D.   Award Plaintiff and the Class all damages allowed by applicable federal and state law, to the utmost amounts allowed by law, including compensatory, punitive and treble damages in an amount to be determined by the trier of fact;

E.   Award Plaintiff and the Class statutory interest and penalties;

F.   Award Plaintiff and the Class appropriate injunctive and/or declaratory relief;

G.	Award Plaintiff and the Class their costs, prejudgment interest, and attorney fees; and

H.	Grant such other relief as is just and proper.

Respectfully submitted by:

/s/ Taylor C. Bartlett
W. Lewis Garrison, Jr. – ASB-3591-N74W
Taylor Bartlett – ASB-2365-A51B
Mark Ekonen – ASB-0204-R79E
Christopher Hood – ASB-2280-S35H
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
Birmingham, Alabama 35203
(p) (205) 326-3336
(f) (205) 380-8085
wlgarrison@hgdlawfirm.com
taylor@hgdlawfirm.com
mark@hgdlawfirm.com
chood@hgdlawfirm.com

Attorneys for Plaintiffs

**PLAINTIFF DEMANDS A JURY TO DECIDE ALL TRIABLE ISSUES**

/s/ Taylor C. Bartlett
Taylor C. Bartlett

**PLAINTIFF REQUESTS SERVICE BY CERTIFIED MAIL**

HP, Inc.
c/o CT Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104